## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHANGHAI CHAMPION TRADING   :   Civil No. 1:25-CV-02148
CO., LTD.,     :
    :
    Plaintiff,     :
    :
    v.     :
    :
LUCY IMPORTS, LLC, *et al.*,     :
    :
    Defendants.     :   Judge Jennifer P. Wilson

## <u>MEMORANDUM</u>

Before the court is Defendant Lefevre 7, LLC's ("Lefevre") motion to dismiss Plaintiff Shanghai Champion Trading Co., LTD's ("Shanghai") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 21.) Lefevre argues that the breach of contract, promissory estoppel, and unjust enrichment claims Shanghai filed against it should be dismissed. (Doc. 21, pp. 1–2.)[1] For the reasons that follow, the court will deny Lefevre's motion.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Shanghai is a Chinese manufacturing company. (Doc. 1, ¶¶ 3, 8.) Defendants Lucy Imports, LLC ("Lucy") and Lefevre (collectively, "Defendants") are both based in Pennsylvania. (*Id.* ¶¶ 4–5.) According to Shanghai's complaint, Stacey Mack and Lori Mack are members of both Lucy and Lefevre. (*Id.* ¶¶ 4–5.)

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

Shanghai manufactures products according to its customers' specifications and provides quality control and technical support services. (*Id.* ¶¶ 8–10.) Shanghai usually sends its customers an invoice for the products and services they order. (*Id.* ¶ 12.)

In March 2015, Shanghai partnered with Advantage Lifts, LLC ("Advantage"). (*Id.* ¶ 13.) Advantage was based in the United States and made automotive lifts. (*Id.* ¶¶ 13–14.) Advantage agreed to order certain products for its lifts from Shanghai, and Shanghai agreed to manufacture and deliver those products to Advantage. (*Id.* ¶ 14.) Shanghai issued an invoice for each purchase order it received from Advantage, and Advantage agreed to pay each invoice within 30 days of receipt. (*Id.* ¶ 15.)

In March 2018, the parties entered an exclusive manufacturing agreement ("the Agreement"). (*Id.* ¶ 16; Doc. 1-2 p. 2.)[2] Shanghai agreed to continue making Advantage's products at the prices listed in the Agreement and refrain from selling those products to any other customer in North America during the term of the

---

[2] The court normally may not consider "matters extraneous to the pleadings" when ruling on a motion to dismiss for failure to state a claim. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). But "a limited exception exists for documents that are *integral to or explicitly relied* upon in the complaint." *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 82 n.4 (3d Cir. 2011) (quoting *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 n.6 (3d Cir. 2010)). Here, Shanghai attached to the complaint the Agreement, the acknowledgement it signed when Advantage sold its assets to Lefevre, and a spreadsheet showing allegedly unpaid invoices. (Doc. 1-2; Doc. 1-3; Doc. 1-4.) It cites to each of these documents in its complaint. (Doc. 1, ¶¶ 16, 20, 30.) Therefore, the court considers these attachments in analyzing the complaint's sufficiency.

Agreement.  (Doc. 1, ¶ 17; Doc. 1-2 p. 2.)  The Agreement would continue indefinitely until either party breached it, filed for bankruptcy, or became insolvent.  (Doc. 1, ¶ 18, Doc. 1-2, p. 2.)  The Agreement stipulated that it would be "governed by and construed in accordance with the laws of the state of Minnesota."  (Doc. 1-2, p. 2.)

After the parties signed the Agreement, Advantage told Shanghai that it had sold its assets to Lefevre and planned to assign the Agreement to Lefevre.  (Doc. 1, ¶ 19.)  Shanghai acknowledged the assignment and began working with Lefevre pursuant to the Agreement.  (*Id.* ¶ 20, 22; Doc. 1-3, pp. 2–3.)  Moreover, the assignment acknowledgment Shanghai signed stated that the Agreement would:

> [L]ast until there is an uncured breach or a party files for bankruptcy or becomes insolvent; provided that neither event occurs in the next five years (nor any other act which could void, terminate or limit the Supplier Agreement) then the Supplier Agreement shall be in effect for that same period.

(Doc. 1-3, p. 3.)  In September 2020, Lefevre asked Shanghai to ship its products and issue its invoices to Lucy instead of Lefevre.  (*Id.* ¶ 22.)  Shanghai complied "pursuant to the parties' exclusive Agreement and course of dealing."  (*Id.* ¶ 23–24.)  Lucy ordered and received products from Shanghai from September 2020 to April 2025.  (*Id.* ¶ 25.)  Lucy usually paid for the products, but one time, on or about January 29, 2021, Lefevre paid Shanghai $973,411.00 for "delivered Products."  (*Id.*)

The parties' business relationship began to break down in November 2024. (*Id.* ¶ 28.)  That month, Defendants ordered, received, and accepted products from Shanghai, but they did not pay.  (*Id.*)  Shanghai kept filling Defendants' orders until April 2025, at which point "Defendants simply owed too much for Shanghai . . . to operate feasibly."  (*Id.* ¶ 29.)  At that point, Defendants owed Shanghai a total of $2,272,571.49 on 67 separate invoices.  (*Id.* ¶ 30.)

Eventually, Shanghai asked Defendants to terminate the Agreement so it could sell its products to other North American customers.  (*Id.* ¶ 32.) Defendants' "principal manager" told Shanghai that "he had no intention of terminating the Agreement or making any immediate payments on the outstanding invoices."  (*Id.* ¶ 33.)  The manager also told Shanghai "[i]f you need to leave our agreement, the cost is 2,272,571.49 USD or you can wait for us."  (*Id.* ¶ 34.) Defendants have not paid any of the 67 outstanding invoices.  (*Id.* ¶ 37.)

Shanghai sued Defendants on November 13, 2025.  (Doc. 1.)  Its complaint raises breach of contract, promissory estoppel, and unjust enrichment claims against Defendants.  (*Id.* ¶¶ 38–57.)  Lucy filed an answer to the complaint and admits therein that it has not paid the outstanding invoices from Shanghai.  (Doc. 15, ¶ 30.)  Lefevre moved to dismiss Shanghai's complaint on January 27, 2026, Doc. 21, and filed a brief in support on February 10, 2026.  (Doc. 22.)  Shanghai filed a brief in opposition on February 24, 2026, Doc. 23, and Lefevre filed a reply

on March 10, 2026.  (Doc. 25.)  Accordingly, Lefevre's motion to dismiss is ripe for disposition.

## JURISDICTION AND VENUE

This court has jurisdiction under 28 U.S.C. § 1332 because the parties have complete diversity and the amount in controversy exceeds $75,000.  Venue is appropriate under 28 U.S.C. § 1391(b).

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to

5

relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds as recognized in Mack v. Yost*, 968 F.3d 311, 319 n.7 (3rd Cir. 2020).

## DISCUSSION

The court begins its analysis of the motion to dismiss with a summary of the parties' arguments. Then, it explains why Shanghai adequately pleads breach of contract, promissory estoppel, and unjust enrichment claims against Lefevre. Finally, it discusses why Lefevre's arguments do not justify dismissal of the claims against it.

### A. The parties' arguments

Lefevre first notes that only a party to a contract may be liable for a breach of that contract, a claim for promissory estoppel may only be brought against a promisor, and a claim for unjust enrichment may only be brought against a defendant who has been enriched. (Doc. 22, pp. 5–6.) Generally, it claims it is no longer a party to the Agreement, it did not make any separate promises to Shanghai, and it has not been enriched. (*Id.* at 6–8.) Therefore, the three claims Shanghai raises against it should be dismissed. (*Id.*) Specifically, Lefevre argues that according to the complaint, only Lucy, not Lefevre, promised to pay the invoices, received the products, and still owes the money. (*Id.* at 6.) Accordingly, Lucy is the only proper defendant. (*Id.*)

6

Regarding the breach of contract claim, Lefevre claims that the Agreement does not obligate it to pay the outstanding invoices for two reasons. First, the Agreement expired no later than December 31, 2023. (*Id.* at 6–7.) In Lefevre's view, the assignment acknowledgement Shanghai signed, Doc. 1-3, set forth a five-year term for the Agreement. (Doc. 22, p. 6.) Therefore, because the Agreement had expired by the time Defendants stopped paying Shanghai, the "only basis for a contract is the collection of invoices themselves, which were issued to Lucy Imports." (*Id.* at 6–7.)

In addition, Lefevre argues that by asking Shanghai to ship products to and collect payment from Lucy, Lefevre assigned the Agreement to Lucy, so the Agreement no longer binds Lefevre. (*Id.* at 7.) It also avers that the January 29, 2021 payment it made to Shanghai is irrelevant to the courts analysis. (*Id.*) According to Lefevre, it made that payment in return for products Shanghai shipped to it prior to its assignment of the Agreement to Lucy, and that payment could not be related to any of the unpaid invoices at issue here, which Shanghai issued to Lucy years later. (*Id.* at 7–8.)

In response, Shanghai first argues the complaint sufficiently alleges that Lefevre and Shanghai had a continuous contractual relationship that extended into 2025. (Doc. 23, p. 9.) It claims that Lefevre's request that Shanghai send its products to and receive payment from Lucy did not assign the Agreement to Lucy

7

or otherwise release Lefevre from its obligations under the Agreement.  (*Id.*)  And it argues that both Defendants acknowledged that the Agreement remained in effect in 2025, contrary to Lefevre's expiration argument.  (*Id.* at 9–10.)  Then, it claims that Lucy's answer to the complaint establishes that Defendants failed to pay Shanghai for delivered products, and the question of which defendant is liable for the nonpayment should not be resolved until after the parties engage in discovery.  (*Id.* at 10.)

Shanghai then reiterates its argument that Lefevre never assigned the Agreement to Lucy, nor did Shanghai release Lefevre from the Agreement.  (*Id.* at 10–11.)  Instead, the complaint alleges Lefevre's request that Shanghai route its business through Lucy was "an internal, logistics-focused directive that did not result in any novation or release of Lefevre from the parties' Agreement."  (*Id.* at 10.)  And although Shanghai agreed to ship products to and collect payment from Lucy instead of Lefevre, it said it would do so "pursuant to the parties' exclusive Agreement and course of dealing."  (*Id.* at 11 (quoting Doc. 1, ¶ 23).)  Thus, even though Shanghai sent its invoices to Lucy, Lefevre remained bound by the Agreement and should not be dismissed from the case.  (*Id.*)

Next, Shanghai claims the Agreement did not expire in 2023.  (*Id.*)  The complaint alleges that the parties continued to transact according to the Agreement in 2025, and that Defendants refused to alter the Agreement despite Shanghai's

requests at that time. (*Id.*) Shanghai asserts that these allegations prove, at this stage, that the Agreement remained in effect beyond 2023, and Lefevre's argument to the contrary does not justify dismissal. (*Id.*)

Finally, Shanghai argues that Lefevre is a proper defendant because the complaint alleges agency and alter-ego theories of liability, Shanghai's claim for promissory estoppel against Lefevre survives regardless of Lefevre's arguments, and Shanghai has adequately pleaded that Lefevre was enriched by refusing to pay Shanghai. (*Id.* at 12–15.)

In reply, Lefevre first argues that the complaint does not allege that Lefevre was involved in any transaction with Shanghai after 2021. (Doc. 25, pp. 1–2.) It claims that beyond that point, Shanghai's complaint contains only conclusory allegations suggesting that Lefevre and Lucy acted in concert. (*Id.* at 2–3.) It argues Lefevre cannot be held liable when Lucy was the only entity that received Shanghai's products and refused to pay. (*Id.*) Moreover, Lefevre claims that Shanghai's argument in support of Lefevre's alter-ego liability is incorrect. (*Id.* at 3–4.)

The court addresses the sufficiency of Shanghai's complaint and the parties' arguments in turn.

**B. Shanghai adequately pleads claims of breach of contract, promissory estoppel, and unjust enrichment against Lefevre.**

Count I of Shanghai's complaint raises a breach of contract claim against Lucy and Lefevre.  (Doc. 1, ¶¶ 38–47.)  Under Minnesota[3] law, the elements of a breach of contract claim are "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant."  *Lyon Fin. Servs., Inc. v. Illinois Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (quoting *Park Nicollet Clinic v. Hamann,* 808 N.W.2d 828, 833 (Minn. 2011)).

Shanghai attached the original agreement to the complaint.  (Doc. 1-2, p. 2.) The complaint alleges that the original agreement was assigned to Lefevre and that Shanghai and both Defendants "entered into valid and enforceable contracts for the sale of goods,"  (Doc. 1, ¶ 39.)[4]  Nowhere does Shanghai allege that Lefevre

---

[3] The Agreement contains a choice-of-law clause that states that it "will be governed by and construed in accordance with the laws of the State of Minnesota."  (Doc. 1-2, p. 2.)  Both parties cite Minnesota caselaw in their briefs.  (*See* Doc. 22, pp. 5–6; Doc. 23, p. 12.)  Lefevre notes that "Pennsylvania law is consistent with Minnesota law on the relevant issues."  (Doc. 22, p. 7 n.2.) But neither party argues that Pennsylvania law, not Minnesota law, should apply to their dispute. For that reason, the court applies Minnesota law in resolving the instant motion.  However, the court's acceptance of the parties' reliance on Minnesota law for the purpose of resolving the instant motion does not preclude further analysis of any choice-of-law issue that may arise later in the case.

[4] The court notes that Minnesota's statutory adoption of the Uniform Commercial Code ("UCC") may ultimately govern some aspects of the parties' dispute because the UCC applies to contracts for the sale of goods.  *Rose v. Qdoba Rest. Corp.*, No. 22-CV-2060, 2023 WL 3571926, at *1 (D. Minn. May 19, 2023) (citing Minn. Stat. § 336.2-102).  Nonetheless, at this stage, the court assumes that the parties' breach of contract, promissory estoppel, and unjust enrichment claims are governed by the common-law elements of those claims as listed herein.  *See Reach Cos.,*

assigned its interest in its agreement with Shanghai to Lucy, no such assignment is apparent in the documents attached to the complaint, and Shanghai alleges that both Lucy and Lefevre received and failed to pay for the products it manufactured. (*Id.* ¶¶ 1–57; Doc. 1-2, p. 2; Doc. 1–3, pp. 2–3; Doc. 1–4, pp. 2–3.)   Accordingly, Shanghai sufficiently alleges the first element of its breach of contract claim against Lefevre.  *See Lyon Fin. Servs., Inc.*, 848 N.W.2d at 543.  Next, Shanghai alleges that it satisfied its obligation pursuant to the contract by manufacturing and delivering the products Defendants ordered, and the complaint identifies no other outstanding condition precedent.  (Doc. 1, ¶¶ 41–46; Doc. 1-2, p. 2.)  Therefore, Shanghai plausibly alleges the second element of its breach of contract claim.  *See Lyon Fin. Servs., Inc.*, 848 N.W.2d at 543.  Finally, Shanghai alleges that Defendants breached the contract by refusing to pay for the products Shanghai manufactured even though they accepted delivery of those products.  (Doc. 1, ¶¶

---

*LLC v. Newsert LLC*, 573 F. Supp. 3d 1349, 1355–57 (D. Minn. 2021) (listing formation of a contract, the plaintiff's performance of any condition precedent, and breach as the elements of the plaintiff's breach of contract claim but then applying the UCC in evaluating a statute of frauds issue in the same contract); *K-tel Int'l, Inc. v. Tristar Prods., Inc.*, No. 00-902, 2004 WL 212840, at *4 (D. Minn. Jan. 29, 2004) (discussing the same elements of a breach of contract claim while examining damages available for the claim under the UCC); *Sunset Cmty. Health Ctr., Inc. v. Cap. One Fin. Corp.*, 652 F. Supp. 3d 1020, 1028 n.6 (D. Minn. 2023) (holding that Minnesota's adoption of the UCC preempted a promissory estoppel claim but noting that even if the UCC did not apply, the plaintiff failed to properly allege the elements of a common-law promissory estoppel claim).  Moreover, the court does not address any potential UCC preemption of Shanghai's breach of contract, promissory estoppel, or unjust enrichment claims because the parties have not briefed that issue.

44–45.)  Thus, Shanghai adequately pleads all three elements of its breach of contract claim.   *See Lyon Fin. Servs., Inc.*, 848 N.W.2d at 543.

Next, Shanghai raises a promissory estoppel claim against Defendants. (Doc. 1, ¶¶ 48–54.)  "In Minnesota, promissory estoppel has three elements: (1) the promisor made a clear and definite promise, (2) the promisor intended to induce reliance and such reliance occurred, and (3) the promise must be enforced to prevent an injustice."  *Satanic Temple v. City of Belle Plaine, Minn.*, 80 F.4th 864, 870 (8th Cir. 2023) (citing *Martens v. Minn. Min. & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn. 2000)).

Shanghai alleges that Defendants "made clear and definite promises to Shanghai . . . that Defendants would timely make payment on the outstanding Invoices."  (Doc. 1, ¶ 49.)  It also alleges that Defendants promised Shanghai that they would "continue to perform under the Agreement, and that Defendants would not allow for the termination of the Agreement or its exclusivity."  (*Id.* ¶ 50.)[5]

---

[5] There appears to be a similarity between Defendants' alleged promise to pay and the obligations imposed on Lefevre by the Agreement.  Since "promissory estoppel is an equitable doctrine that implies a contract in law where none in fact exists, an express contract covering the same subject matter will preclude the doctrine's application."  *HomeStar Prop. Sols., LLC v. Safeguard Props., LLC*, 370 F. Supp. 3d 1020, 1028 (D. Minn. 2019) (quoting *Martens*, 616 N.W.2d at 746 and then quoting *Greuling v. Wells Fargo Home Mortg., Inc.*, 690 N.W.2d 757, 761 (Minn. Ct. App. 2005)) (internal quotation marks and citations omitted).  The same rule applies to unjust enrichment claims under Minnesota law. *Taylor Inv. Corp. v. Weil*, 169 F. Supp. 2d 1046, 1060 (D. Minn. 2001) ("The existence of an express contract between parties precludes recovery under theories of quasi-contract, unjust enrichment, or quantum meruit.") (citing *Sterling Capital Advisors, Inc. v. Herzog,* 575 N.W.2d 121, 126 (Minn. Ct. App. 1998)).  However, because the parties have not briefed that issue and determining the similarity between

Accordingly, Shanghai adequately pleads the first element of its promissory estoppel claim against Lefevre.  *See Satanic Temple*, 80 F.4th at 870.

Next, Shanghai claims Defendants made their promises "with the knowledge that they would induce action or reliance . . ." by Shanghai, and that "[b]ased on assurances payments would be made . . . Shanghai . . . continued to fill orders for Defendants through April 2025 . . . ."  (Doc. 1, ¶¶ 29, 51.)  Moreover, Shanghai avers that it justifiably relied on Defendants' promises to pay and to refuse to terminate the Agreement by "purchasing large quantities of materials for Products ordered by and delivered to Defendants pursuant to the purchase orders submitted by Defendants, and timely arranging for the delivery of the manufactured Products as directed by Defendants."  (*Id.* ¶ 52.)  Element two of Shanghai's promissory estoppel claim is therefore satisfied.  *See Satanic Temple*, 80 F.4th at 870.

Finally, Shanghai alleges that "injustice may only be avoided by enforcement of Defendants' promises."  (Doc. 1, ¶ 53.)  The injustice described in Shanghai's complaint is that Defendants never paid Shanghai for more than two million dollars' worth of exclusively made products they accepted.  (*Id.* ¶¶ 52, 54.)  "Numerous considerations enter into a judicial determination of injustice, including the reasonableness of a promisee's reliance and a weighing of public

---

the alleged promise and the Agreement may involve answering factual questions, the court does not address this issue at this stage.

policies in favor of both enforcing bargains and preventing unjust enrichment."

*Satanic Temple v. City of Belle Plaine*, No. 19-CV-1122, 2021 WL 4199369, at \*7

(D. Minn. Sept. 15, 2021), *aff'd sub nom. Satanic Temple v. City of Belle Plaine,*

*Minn.*, 80 F.4th 864 (8th Cir. 2023) (quoting *Faimon v. Winona State Univ.*, 540

N.W.2d 879, 883 (Minn. Ct. App. 1995)).  Shanghai's complaint alleges a long

history of business between Shanghai and Defendants. (*See* Doc. 1, ¶ 29.)  And so

the court finds, based on those allegations, that Shanghai's reliance on Defendants'

promises was reasonable.  Allowing Defendants who allegedly failed to pay for

more than two million dollars' worth of specially manufactured products to

continue their nonpayment would clearly contradict public policy and hinder the

benefits of bargaining.  (*See id.* ¶ 30.)  Accordingly, Shanghai has adequately

alleged all three elements of its promissory estoppel claim against Lefevre.  *See*

*Satanic Temple*, 80 F.4th at 870.

That leaves Shanghai's unjust enrichment claim.  (Doc. 1, ¶¶ 55–57.)  Under

Minnesota law, an unjust enrichment claim "sounds in equity and requires the

plaintiff to establish the following elements: '(1) a benefit conferred; (2) the

defendant's appreciation and knowing acceptance of the benefit; and (3) the

defendant's acceptance and retention of the benefit under such circumstances that

it would be inequitable for him to retain it without paying for it.'"  *Hull v.*

*ConvergeOne, Inc.*, 570 F. Supp. 3d 681, 706 (D. Minn. 2021) (quoting *Dahl v.*

*R.J. Reynolds Tobacco Co.*, 742 N.W.2d 186, 195 (Minn. Ct. App. 2007)).

Shanghai conferred the benefit of its products on Defendants, and Defendants

accepted those products knowing that they owed Shanghai payment according to

the complaint.  (Doc. 1, ¶¶ 28, 34, 56.)  Shanghai's complaint demonstrates that it

would be inequitable for Defendants to retain this benefit without paying for it.

(*Id.* ¶ 57.)  Therefore, Shanghai has adequately pleaded its unjust enrichment claim

against Lefevre.  *See Hull*, 570 F. Supp. 3d at 706.

### C. Lefevre's arguments rely on factual assertions inappropriate for resolution at the motion to dismiss stage.

Lefevre offers three primary arguments in support of its motion to dismiss

Shanghai's complaint.  The court explains in turn why each argument does not

carry Lefevre's burden to prove that the complaint should be dismissed.  *Hedges v.*

*United States*, 404 F.3d 744, 750 (3d Cir. 2005) (noting that, on a Rule 12(b)(6)

motion to dismiss for failure to state a claim, "the defendant bears the burden of

showing that no claim has been presented") (citing *Kehr Packages, Inc. v.*

*Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991)).

First, Lefevre argues that the complaint does not sufficiently allege that it

took part in the transactions at issue and that any allegations suggesting its

involvement are conclusory.  (Doc. 22, p. 6 ("[T]he Complaint alleges claims

against Lucy Imports for payment, not LeFevre"); Doc. 25, pp. 2–3 ("[The

"conclusory" use of the plural term "Defendants" in the complaint] cannot

15

obfuscate the factual basis for Plaintiff's claims, which is that products were delivered to Lucy Imports for which invoices were issued and remain unpaid.")[6] But the complaint alleges that Lefevre merely directed Shanghai to ship its products to Lucy Imports "pursuant to the parties' exclusive Agreement and course of dealing," and that both Defendants received and failed to pay for the products at issue. (Doc. 1, ¶¶ 23, 38–57.) Moreover, the complaint alleges that Defendants shared common members and acted through the same principal manager. (*Id.* ¶¶ 4–5, 31.) It is true that the complaint neither fully explains the relationship between Lefevre and Lucy nor the details of how both entities received the shipments of products and individually or collectively failed to pay. (Doc. 22, p. 6; Doc. 25, p. 2.) But as the court explained above, Shanghai's complaint specifically alleges each of its claims against both Defendants, not only Lucy. Lefevre may argue this issue after discovery sheds further light on the relationship between Lefevre and Lucy and Shanghai's agreements with one or both. But construing all reasonable inferences in Shanghai's favor, Shanghai has adequately stated a claim against Lefevre, specifically.

Second, Lefevre argues that the claims against it should be dismissed because the Agreement expired in December 2023. (Doc. 22, pp. 6–7.) Shanghai

---

[6] Lefevre briefly argues that the Agreement "would only apply when Plaintiff shipped product to and invoiced Lefevre . . ." but provides no explanation of how the terms of the Agreement implement that restriction. (Doc. 25, pp. 2–3.)

alleges that it continued to transact with both Defendants according to the Agreement's terms into 2025, and that Defendants recognized the Agreement was still in place at that time.  (Doc. 1, ¶¶ 26, 33 (explaining that the parties acted "in accordance with the Agreement throughout 2024 and into 2025" and that, in 2025, Defendants' principal manager stated that he had "no intention of terminating the Agreement . . .").)

Minnesota law recognizes that "when parties continue to perform under an expired contract, their conduct can give rise to a new, implied-in-fact contract." *Webb Candy, Inc. v. Walmart Stores, Inc.*, No. 09-CV-2056, 2010 WL 2301461, at *8 (D. Minn. June 7, 2010) (citing *Steed v. Busby,* 593 S.W.2d 34, 38 (Ark. 1980); *Bolander v. Bolander,* 703 N.W.2d 529, 542 (Minn. App. 2005)); *see Fischer v. Pinske*, 243 N.W.2d 733, 735 (Minn. 1976).  Therefore, even if the court agreed with Lefevre and held that the Agreement modification imposed a limited five-year term, Doc. 22, pp. 6–7, Shanghai's complaint supports the inference that the parties maintained an implied-in-fact contract long after the purported expiration date. (Doc. 1, ¶ 26.)  Any argument about Lefevre's status as a party to those post-2023 transactions is better addressed after Lefevre, Lucy, and Shanghai clarify their commercial relationship through discovery.

Third and finally, Lefevre argues that the court should dismiss Shanghai's claims against it because it assigned the Agreement to Lucy before Defendants

17

stopped paying Shanghai.  (Doc. 22, p. 7; *see* Doc. 25, p. 3.)  The complaint does not allege that Lefevre assigned the Agreement to Lucy.  It merely states that "LeFevre's principal manager requested that all imports be done through a new entity, Lucy Imports."  (Doc. 1, ¶ 22.)  The Agreement specifies that any assignment must be done with notice to Shanghai.  (Doc. 1-2, p. 2.)  Shanghai does not allege it received notice that Lefevre planned to assign the Agreement to Lucy. (*See* Doc. 1, ¶ 22.)  Therefore, although Lefevre may argue the issue of assignment after discovery concludes, the court lacks the facts to properly consider that issue at this stage.[7]

---

[7] Because the court finds Lefevre's arguments do not carry its burden, it does not reach Shanghai's alternative arguments about agency and alter-ego liability.  (Doc. 23, pp. 12–13.)

## CONCLUSION

Shanghai adequately pleaded a breach of contract, promissory estoppel, and unjust enrichment claim against Lefevre.  Lefevre's arguments to the contrary rely on factual assertions that may not be considered at the motion to dismiss stage. Therefore, Lefevre's motion will be denied.  An order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: April 10, 2026